# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

In Re: CLAUDIO TARQUINIO,

*Debtor*

CLAUDIO TARQUINIO,

*Appellant*,

v.

PIO TARQUINIO, et al.

*Appellee,*

Civil Action No.: 17-cv-01917 (PGS)

**MEMORANDUM AND ORDER**

Debtor Claudio Tarquinio, appeals an order by Bankruptcy Court Judge Katheryn C. Ferguson. Judge Ferguson granted Appellees Pio Tarquinio (hereinafter, "Pio") and Drinker Biddle & Reath's (hereinafter, "DBR") motion to convert his Chapter 11 Bankruptcy to Chapter 7 and denied Debtor's claimed exemptions. Over the summer, the Debtor's attorney sought to be relieved as counsel. The Court granted his motion and provided time for Debtor to find new counsel, and for his former counsel to transfer Debtor's files to his new attorney (if any). Oral argument was scheduled for November 8, 2017 at 2:00 p.m. The Debtor did not appear, and no attorney entered an appearance on his behalf. The Court affirms the decision of the Bankruptcy Court for the reasons set forth herein.

By way of background, in June 2012, Debtor retained DBR to represent him in an ongoing business dispute between him and Pio, his brother and former business partner. (Bankruptcy Appendix ["App."] at 1045). Over the course of its representation, DBR incurred unpaid legal fees and expenses of $118,865.07 and was fired by Debtor before the conclusion of the lawsuit.

1

(*Id.* at 1045-56). Thereafter, in March 2013, Debtor and his wife initiated a lawsuit against DBR, alleging various theories of professional negligence. (*Id.* at 1060-80). However, on October 2015, a New Jersey Superior Court judge found in favor of DBR, concluding that Debtor and his wife's claims were frivolous and that they "manufactured this baseless lawsuit . . . by alleging a fictitious set of facts." (*Id.* at 1076). As such, in an October 2015 order, the trial court imposed sanctions against Debtor and his wife, and awarded DBR a judgment against them in the amount of $196,914.06. (*Id.* at 1058-59). When Debtor and his wife failed to pay the judgment, DBR obtained a court order authorizing the sale of Debtor's real property in Skillman, New Jersey, in satisfaction of the principal amount of $172,747.55. (*Id.* at 1239-41). On October 5, 2016, a Somerset County Sheriff's Officer levied on the Skillman property. (*Id.* at 1235).

During this same timeframe, Debtor remained embroiled in litigation against Pio, wherein Pio alleged claims of conversion, minority shareholder oppression, fraud, and breach of fiduciary duties. (*Id.* at 576). In a seventy-five page written decision, another New Jersey Superior Court judge held that Debtor was liable for, among other things, fraudulently and grossly mismanaging the brothers' business, and awarded Pio compensatory and punitive damages of $3,205,258.68 on September 27, 2016. (*Id.* at 544).

Almost a month later, on October 26, 2016, Debtor filed for Chapter 11 Bankruptcy. (*Id.* at 1). As part of his bankruptcy petition, Debtor disclosed ownership of the following assets: (1) two pieces of real property jointly owned with his wife, valued at $1.2 million; (2) ownership interest in five companies, valued at over $7.6 million; (3) intellectual property with no value; and (4) potential claims against his brother, Pio, and his former counsel, DBR, totaling $925,250.[1] (*Id.*

---

[1] Despite the prior state court decisions, Debtor's petition identifies a claim against DBR for "legal malpractice and personal injury" and against Pio for "wrongful conversion of assets of the bankruptcy estate."

at 323-28, 626-31). Debtor also sought to exempt from the bankruptcy proceeding real properties in Princeton, New Jersey and Skillman, New Jersey since they are owned by Debtor and his wife as tenants by the entirety. (*Id*. at 20). DBR and Pio thereafter filed objections to Debtor's property exemptions. (*Id*. at 337-445).

On January 13, 2017, Pio filed a motion to appoint a Chapter 11 trustee or, alternatively, convert Debtor's case to Chapter 7. (*Id.* at 523-24). In support of his motion, Pio relied on his attorney's certification and the New Jersey Superior Court's underlying judgment, which demonstrated Debtor's prior misconduct at the state proceedings. Notably, in the underlying state proceeding, the trial court found that Debtor violated various discovery orders, held him in contempt, and struck his pleadings with prejudice. (*Id.* at 546). Therefore, Pio contended that cause existed to convert Debtor's Chapter 11 case to Chapter 7 based on: (1) Debtor's pre-petition conduct; and (2) Debtor's inability to confirm a plan of reorganization due to lack of income. (*Id.* at 539-42).

Debtor opposed Pio's motion, contending that Pio failed to meet his burden under 11 U.S.C. § 1104(a) or § 1112(b), since cause did not exist to convert his case to Chapter 7. (*Id.* at 1257-82). Specifically, Debtor claimed he was receiving regular income through gifts from family and was "actively seeking employment in his field that would pay as much as $100,000 per year." (*Id.* at 1279). As such, Debtor contended he had "a host of assets that could be utilized to fund a plan of reorganization," which negated a finding of cause to convert his Chapter 11 case to Chapter 7. (*Id.*). Debtor also raised a procedural argument, contending that the attachment of the attorney certification to Pio's motion was improper.

The following month, February 23, 2017, Debtor filed a proposed plan of reorganization which he planned to fund through: (1) future earnings; (2) contribution from an unknown source

of no more than "$50,000"; (3) "disposition or refinancing of Assets"; and (4) "proceeds from causes of actions." (*Id.* at 1294-95). However, Debtor provided no additional information to support his claims for future earnings or the source of new contributions. The plan of reorganization also included a "Classification of Claims and Interests," which revealed that DBR had a "Class 2" Secured Claim against debtor. (*Id.* at 1290). The plan described a "Secured Claim" as, "a Claim secured by a lien on any Asset, which lien is valid, perfected and enforceable and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, but only to the extent that such Claim does not exceed the value of the Asset securing such Claim." (*Id.* at 1289). The plan also noted that Pio had a "class 4 unsecured claim" of $3,205,258.68 and that he has not obtained a judgment lien against any property. (*Id.* at 1293).

Oral argument on the motions was heard on March 7, 2017. (*Id.* at 1570-1625). Both Pio and DBR argued that Debtor's lack of good faith, as demonstrated by Debtor's pre-petition conduct and his failure to comply with discovery requests, warranted Chapter 7 conversion immediately. (*Id.* at 1573, 1590-91). Moreover, DBR questioned the legitimacy of Debtor's reorganization plan, characterizing it as a "cookie cutter boilerplate plan" designed to stall the bankruptcy proceedings. (*Id.* at 1574). Debtor's counsel responded that Debtor's past conduct should not be considered by the court. (*Id.* at 1582). Regarding his reorganization plan, Debtor's counsel contended that it was "confirmable on its face." (*Id.* at 1585). He also argued that converting this case to Chapter 7 would not be in the creditor's interest since Debtor would not be able to maintain going concern values of his assets and estate. (*Id.* at 1588).

After hearing oral argument, the bankruptcy court rendered its decision on the record. The court was unpersuaded by Debtor's procedural argument, concluding that the certification was acceptable and the attorney had personal knowledge of the facts presented, since he was Pio's

4

attorney in the State court action. (*Id.* at 1596). The court then found there was independent unrefuted facts supporting the appointment of a Chapter 11 trustee or conversion to Chapter 7:

> [T]he fact that the State Court first struck [Debtor's] answer without prejudice and then later made it with prejudice speaks volumes. The certification also establishes that [Debtor] was held in contempt for failing to abide by a temporary restraining order. Those facts satisfy the movant's burden. The burden then shifts to the debtor to refute the showing of cause. In defense of this motion, the debtor did not submit a certification refuting those facts. On those unrebutted facts alone the Court has ample room to find that cause exists to appoint a trustee or to convert the case.

(*Id.* at 1598). The court then addressed Debtor's reorganization plan, finding it without merit:

> My concern is not that the plan is a cookie cutter plan. The plan that [Debtor] filed is so devoid of specifics both regarding the treatment of creditors and the funding of the plan that it's a non-starter. The plan will allegedly be funded by future earnings of the debtor. At this point it is pure speculation that he will have any income whatsoever, a new valuation - - a new value contribution of $50,000, there's no indication of when that money will be made or where the money will come from, and the sale or refinance of assets. But no information about which assets or when they will be sold or refinanced.
>
> One of the duties of [a debtor-in-possession] is to conserve property in its possession for the benefit of creditors. . . . At this point the Court has no confidence that the debtor can perform this function. This is a plan that does not have a reasonable prospect of being confirmed within a reasonable time.

(*Id.* at 1599). Finally, in weighing whether to appoint a Chapter 11 trustee or convert the case to Chapter 7, the bankruptcy court found persuasive the fact that the "bulk of the creditor body support[ed] conversion," as did the United States trustee, and therefore granted the motion to convert.

The court then sustained Appellees' objection to the Debtor's exemption. The court explained that whether Appellees were creditors to both Debtor and his wife was irrelevant since "under New Jersey law a creditor of either spouse has the right to reach property held as a tenancy-by-the-entirety subject to a right of survivorship." (*Id.* at 1616). Therefore, the court concluded that since Debtor's real properties are subject to process, it cannot be exempted under 11 U.S.C. §

522(b)(3)(B). The court entered an order two days later consistent with its decision on the record. (*Id.* at 1626-27).

On appeal, Debtor presents the following arguments: (1) the bankruptcy court erred in finding cause to convert his Chapter 11 case to Chapter 7; (2) the bankruptcy court erred in denying Debtor's property exemption under Section 522(b)(3)(B); and (3) the bankruptcy court failed to made adequate findings of fact. Appellees United States Trustee (hereinafter, "Trustee"), DBR, and Pio join in opposing Debtor's appeal and request the Court affirm the bankruptcy court's decision.

## **LEGAL STANDARD**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. A Bankruptcy Judge's factual finding is considered to be clearly erroneous "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citations omitted). A bankruptcy court's legal conclusions, however "are subject to the district court's plenary review." *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir. 1989). If a decision involves mixed questions of law and fact, the Court utilizes a mixed standard of review. We accept the trial court's finding of historical or narrative facts unless clearly erroneous, but exercise "plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Comm'cns, Inc.*,

945 F.2d 635, 642 (3d Cir. 1991) (citations omitted). Additionally, a Bankruptcy Court's exercise of discretion is reviewed by this Court using an abuse of discretion standard. *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353 (3d Cir. 2002).

## ANALYSIS

I.  The Bankruptcy Court Did Not Abuse Its Discretion by Converting Debtor's Case

Debtor contends the bankruptcy court abused its discretion in finding "cause" to convert the Chapter 11 case to Chapter 7. Appellees respond that the record provides ample support for the Court to affirm the bankruptcy court's order. The Court agrees.

We review a bankruptcy court's decision to convert a Chapter 11 case to a Chapter 7, pursuant 11 U.S.C. § 1112, for abuse of discretion. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161 (3d. Cir. 2012). An abuse of discretion "can occur if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995). "Section 1112(b) requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'" *Am. Capital Equip.*, 688 F.3d at 161 (citing 11 U.S.C. § 1112(b)). Section 1112(b)(4) sets forth a non-exhaustive list of examples of "cause"; however, a court is nevertheless "able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999).

*1. Cause for Conversion*

Debtor first contends that the bankruptcy court lacked "cause" for conversion under Section 1112(b). Specifically, Debtor claims that the bankruptcy court failed to make any proper

7

findings to support its determination that "cause" existed to convert his case. The Court is unpersuaded. In reviewing the bankruptcy court's decision, it is clear that the bankruptcy court based its decision on: (1) the inability to effectuate a plan; and (2) Debtor's pre-petition misconduct in the underlying state litigation. Each basis will be discussed in turn.

First, "[a]lthough the statute no longer lists this as an example of 'cause' . . . the inability to effectuate a plan remains a viable basis for dismissal because the listed examples of cause are not exhaustive." *Am. Capital Equip.*, 688 F.3d at 162 n.10. "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991) (internal quotation marks and citation omitted). However, "where there is not 'a reasonable possibility of a successful reorganization within a reasonable period of time,'" a court may find cause to convert the debtor's case from a Chapter 11 bankruptcy proceeding into Chapter 7. *Am. Capital Equip.*, 688 F.3d at 162 (quoting *In re Brown*, 951 F.2d at 572)).

Here, the bankruptcy court was particularly critical of the fact that "the plan that the debtor filed is so devoid of specifics both regarding the treatment of creditors and the funding of the plan that it's a non-starter." (App. at 1599). Although Debtor identified four sources of income to fund his reorganization plan, he provided no details as to the origin of each source of income and when or how he would receive these funds. Simply put, his plan amounted to an "unsubstantiated hope[] for a successful reorganization." However, without more, the Court sees no reason to interfere with the bankruptcy court's decision.

Second, courts have recognized that pre-petition misconduct can constitute "cause" under Section 1112(b) to support conversion. *See In re Picacho Hills Util. Co., Inc.*, 518 B.R. 75, 80 (Bankr. D.N.M. 2014); *In re Mazzocone*, 180 B.R. 782, 788 (Bankr. E.D. Pa. 1995) (holding that a debtor's misconduct during the pendency of the bankruptcy should have been considered by the

bankruptcy court in determining the appellant's motion to convert the debtor's Chapter 11 case); *see also* 7 Collier on Bankruptcy ¶ 1112.04 [7] (16th ed. 2017) (when parties disagree on conversion, the court should consider, among other factors, "whether the debtor had engaged in misconduct and whether the creditors are in need of a chapter 7 case to protect their interests."). Generally, pre-petition misconduct, alone, is insufficient to support a finding of cause; however, when the misconduct is so severe, "it can be given greater weight as part of the totality of circumstances establishing cause." *Picacho Hills*, 518 B.R. at 82. Here, the Court finds persuasive Debtor's prior misconduct in the underlying state litigation, which involved fraudulent attempts to disgorge assets from the brothers' business and defiant behavior towards the state court's discovery orders. The Court is satisfied that such misconduct was inconsistent with the interests of the Appellees, as creditors, and was properly considered by the bankruptcy court. *Picacho Hills*, 518 B.R. at 80.

Finally, the Court is unconvinced by Debtor's argument that the trial court erred in finding cause under 1112(b)(4)(A).[2] The party seeking to demonstrate cause, under 1112(b)(4)(A), has the initial burden of demonstrating: (1) "substantial or continuing loss"; and (2) "the absence of a reasonable likelihood of rehabilitation." *In re Grasso*, 497 B.R. 448, 455 (Bankr. E.D. Pa. 2013). "Once a movant establishes that cause for conversion exists, the burden shifts to the opposing party to specifically identify unusual circumstances that show conversion would not be in the best interest of the estate and its creditors and that there is a reasonable likelihood that a plan will be confirmed." *Id.* (citing 11 U.S.C. § 1112(b)(2)).

---

[2] The Court notes that the bankruptcy court did not explicitly identify this factor as a basis for finding cause; however, for the sake of completeness, the court nevertheless addresses Debtor's argument on this issue.

To meet their initial burden, Appellees argued that Debtor has exhibited misconduct in prepetition proceedings, wherein he was found liable for fraud and improperly dissipating assets from his businesses; which demonstrated a threat of substantial or continuing loss to the estate. (App. at 542). Moreover, Appellee Trustee notes that Debtor's monthly reports reflect a downward financial trend, suggesting that Debtor is experiencing negative cash flow. *See In re Creekside Senior Apts., L.P.*, 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013) (finding that a "substantial or continuing loss" may be demonstrated where a debtor continues to incur or maintain a negative cash-flow). According to Debtor's first four monthly financial reports, Debtor reported a total income of $29,650, while incurring total expenses of $29,866.12 (App. at 308-16; 518-22; 1556-69). As such, under prong one, when considering Debtor's financial prospects and his current financial records, the Court is satisfied that the record supports a finding of continuing losses or diminution of the estate. *See In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007) ("Negative cash flow and an inability to pay current expenses as they come due can satisfy the continuing loss or diminution of the estate standard").

Similarly, the Court is satisfied that Appellees have satisfied the second prong of Section 1112(b)(4)(A), "the absence of reasonable likelihood of rehabilitation." "[Rehabilitation] signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met." *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003). Here, as discussed above, Debtor has presented no competent evidence to support his contention that he has met that rehabilitation standard. Finally, Debtor has failed to identify any "unusual circumstances that show conversion would not be in the best interest of the estate." As such, there is no demonstration of any error by the bankruptcy court. *In re Grasso*, 497 B.R. at 455

Simply put, when considering the totality of the circumstances, there is more than sufficient evidence in the record to support the bankruptcy court's determination that cause existed to convert Debtor's Chapter 11 case to Chapter 7. The record shows that the Debtor has failed to provide a reliable or realistic reorganization plan and, more importantly, that the Debtor has engaged in pre-petition misconduct that was inconsistent with the interests of DBR and Pio. As such, the Court finds no reason for concluding that the bankruptcy court abused its discretion in finding that cause existed to convert the case from Chapter 11 to Chapter 7.

2. *Best Interests of the Creditor and Estate*

Having concluded that the bankruptcy court did not abuse its discretion in finding "cause," the Court next considers whether converting Debtor's case to Chapter 7 was in the best interest of the creditors and estate. *See Am. Capital Equip.* 688 F.3d at 163. "A bankruptcy court has 'wide discretion' to 'use its equitable powers' to make an appropriate disposition of the case.'" *Id.* (citation omitted). There is generally a strong presumption against appointing a trustee, since "[t]he debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization." *In re Marvel Entm't Grp.*, 140 F.3d 463, 471 (3d Cir. 1998) (internal quotation marks and citations omitted). Here, the bankruptcy court expressed concern of Debtor's ability to satisfy his fiduciary obligations and, more importantly, acknowledged that Appellees Pio and DBR supported conversion to Chapter 7, which the Trustee joined in support. (App. at 1578). As the Third Circuit noted in *American Capital*, "[p]rolonging this case will only burden the estate with mounting attorney and administrative fees." 688 F.3d at 163. Therefore, given that there are serious questions regarding Debtor's ability and willingness to conserve the property, and that the

Appellees all joined in support for conversion to Chapter 7, the Court sees no reason for concluding that the bankruptcy court abused its discretion.

II. <u>The Bankruptcy Court Did Not Err in Denying Debtor's Claimed Exemptions</u>

Debtor next challenges the bankruptcy court's decision on the basis that it erred in failing to find that his two real properties, which he owns with his wife as tenants by the entirety, are exempt from process under New Jersey common law and, therefore, exempt under Section 522(b)(3). Appellees respond, contending that the bankruptcy court's decision was consistent with New Jersey law. The Court agrees.

Section 522(b)(3)(B) exempts from the bankruptcy process "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety . . . to the extent that such interest as a tenant by the entirety . . . is exempt from process under under applicable nonbankruptcy law." As such, "we generally turn to state law for the determination of property rights in the assets of a bankrupt's estate." *In re Brannon*, 476 F.3d 170, 176 (3d Cir. 2007) (internal quotation marks and citation omitted). In New Jersey, "[i]t is well established that a debtor's interest in property held as tenant by the entirety may be reached by the debtor's creditors." *S.E.C. v. Antar*, 120 F. Supp. 2d 431, 449 (D.N.J. 2000) (citing *Newman v. Chase*, 359 A.2d 474 (N.J. Sup. Ct. 1976)). "New Jersey long has recognized that a lien may attach to the interest of one spouse in property held by the entireties." *United States v. Avila*, 88 F.3d 229, 234 (3d Cir. 1996). As such, New Jersey law does not exempt a creditor's interest in property held by the entirety.

Citing Section 522(f), Debtor next contends that both parties' liens are voidable since "they impair [Debtor's] exemption under Section 522(b)(3)(B)." Generally, a judicial lien is unaffected by a bankruptcy case. *See In re Mansaray-Ruffin*, 530 F.3d 230, 235 (3d Cir. 2008). "A bankruptcy

12

discharge does not discharge a judicial lien, rather, the debtor must affirmatively seek to have the judicial lien extinguished." *In re Corio*, No. 07-5864, 2008 U.S. Dist. LEXIS 71642, at *12 (D.N.J. Sept. 22, 2008). Section 522(f)(1)(A) states that a debtor may avoid a judicial lien if "such lien impairs an exemption to which the debtor would have been entitled to" under Section 522(b). Here, Debtor's contention is that the DRB and Pio's judgments impaired his real property exemptions under 522(b). However, as discussed above, New Jersey law recognizes a creditor's ability attach a lien on property held by the entireties; as such, these liens do not interfere with any exemptions that Debtor was otherwise entitled to. Therefore, Debtor's reliance on Section 522(f)(1)(A) is unavailing. To the extent not addressed here, Debtor's remaining arguments lack sufficient merit to warrant further discussion.

III.     The Court Made Required Findings of Fact

Finally, Debtor generally contends that the bankruptcy court failed to make required findings of fact and conclusions of law, as required under Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A bankruptcy court's factual determinations will not be set aside unless they are "clearly erroneous." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (Bankr. D.N.J. 2005). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). Here, based on a review of the record, the bankruptcy court explicitly discussed Debtor's prior misconduct in the underlying matter and his present and prospective financial situation as a significant factors weighing towards conversion. As such, the Court is satisfied that the bankruptcy court set forth sufficient facts to support its determinations.

# ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 27th day of November, 2017,

ORDERED that the bankruptcy court's decision is AFFIRMED.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.